UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREDRICK J. REFOUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:11-cv-01064-SEB-DML |
| PAR NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the motion of Defendant PAR North America ("PAR") for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons detailed herein, PAR's motion is GRANTED.

**Factual Background**

Plaintiff Fredrick Refour was hired by PAR as an Account Coordinator in November, 2010. When he was hired, he was a temporary employee secured through an employee staffing company. Shortly after Refour was hired, the President and CEO of PAR, Jerry Kroshus, decided to hire ReFour on a full time basis as a Senior Account Manager. Kroshus was impressed by ReFour's background experience and thus bypassed PAR's normal hiring practices to employ him for that position.

On the morning of December 20, 2010, ReFour came into the break room behind Stephanie Compton, also a PAR employee who at the time had been with the company for eleven years.[1] According to ReFour, he commented jokingly about Compton's short height, not

---

[1] Compton has since resigned from PAR to pursue another job opportunity.

unlike the remarks he had heard other PAR employees make in meetings. ReFour maintains that he said, "Nice boots. You sure you didn't get those off the mirror of my car" and "They are the same size as my son's baby shoes." Compton has a different account of the exchange. Compton testified that as ReFour entered the break room he said that she was "taking the fun out of it." When Compton turned to face ReFour, Compton testified that ReFour said, "Nice boots. I liked seeing them hang from my mirror this morning," which Compton took to imply that she had stayed with ReFour the night before.

Later that morning, Compton told Roger McDonald, ReFour's supervisor, about ReFour's comments. McDonald reported the incident to Rich Levene, who was McDonald's supervisor, who reached out to Compton to advise her to memorialize the incident in an e-mail. Compton prepared and sent the following email to Levene, who forwarded it on to Kroshus for review:

> Earlier today, I was in the break room making a cup of tea. Fredrick ReFour came in to the break room to make a cup of coffee. As he walked up behind me, he told me I was taking the fun out of it. I turned and asked him what he meant. He asked if I heard what he said. I told him no. He told me "Nice boots, I like[d] them hanging from my mirror this morning." He continued filling up his coffee mug. I did not say anything to him, other than the coffee pot was spilling. I walked away from him and went back to my office.
>
> I am not sure exactly what he meant. However, it caught me off guard. I felt extremely awkward and uncomfortable.

That evening, McDonald and Levine spoke to Kroshus regarding the incident. Kroshus made the decision to terminate ReFour's employment as a result of the incident because he believed that ReFour's comments violated PAR's policy against sexual harassment. Kroshus never questioned ReFour regarding the incident. Both Kroshus and McDonald testified that they

believed Compton's account because of Compton's long tenure with the company as compared to ReFour's brief period of employment.

Other than this single incident between ReFour and Compton, there were no concerns regarding his performance. The following day, ReFour was notified that his employment was terminated.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial

may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir.1997).

**II.     Discussion**

ReFour, an African-American male, brought action against PAR pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e *et. seq.* and 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination under Title VII through either direct evidence of discrimination or indirectly through the burden-shifting analysis established in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006). ReFour concedes that he has no direct evidence of discrimination and, thus, our analysis shall proceed under the indirect method as discussed in McDonnell Douglas.

Under the McDonnell Douglas framework, a plaintiff must begin by establishing a *prima facie* case of discrimination. If one can be established, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff. If the defendant can offer a legitimate, nondiscriminatory reason for the employment decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual. Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005). The traditional *prima facie* case requires a showing by the plaintiff: (1) that he was part of a class of persons protected by Title VII; (2) that he was meeting his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly-situated individuals outside his protected class were treated more favorably. See Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 830 (7th Cir. 2007).

PAR contends that ReFour cannot establish his prima facie case because he was not meeting PAR's legitimate job expectations and in addition because he cannot show that similarly situated individuals outside his protected class were treated more favorably. PAR further contends that ReFour cannot show that its proffered reason for terminating ReFour's employment, to wit, his violation of the sexual harassment policy, was pretextual. We discuss each of these contentions below.

### A. ReFour's Prima Facie Case

#### 1. Legitimate Expectations

PAR asserts that ReFour was not meeting its legitimate employment expectations by having misbehaved in a manner that violated the Company's sexual harassment policy. However, in viewing the facts in ReFour's favor as we must at the summary judgment stage, ReFour did not make the sexually inappropriate statement upon which his termination was allegedly based. In addition, ReFour has designated testimony from his supervisor that, outside of the incident with Compton, PAR had no concerns with ReFour's performance of his job related responsibilities. Thus, ReFour has established a genuine issue of material fact with regard to whether he was meeting PAR's legitimate employment expectations.

#### 2. Similarly-Situated Individuals

PAR also contends that ReFour has failed to identify a similarly-situated Caucasian employee who violated PAR's sexual harassment policy but was not terminated. ReFour correctly points out that PAR's argument is predicated on a disregard of ReFour's version of the facts – that is, that he did *not* sexually harass Compton. According to ReFour, the comment he made related to Compton's height. Thus, he should be compared to other individuals that engaged in that activity. Compton testified that several Caucasian managers – Tim Massengill,

Lynn Elliott, Jennifer Perry, Ryan McTamney, Nick Orr – had made jokes relating to her height. However, despite insufficiencies in PAR's motion, ReFour himself has failed to submit any evidence regarding these managers that would show they were similarly situated to him.[2] ReFour has failed to inform the Court of any specifics regarding these managers' behavior and/or positions with PAR. More importantly, ReFour has failed to establish that the managers' jokes were ever brought to the attention of Kroshus, the official with PAR who apparently made the decision to terminate ReFour. See, e.g., Brasic v. Heinemann's Inc., 121 F.3d 281, 286-87 (7th Cir. 1997). Thus, ReFour's failures in identifying similarly-situated individuals who were treated more favorably preclude him from establishing his prima facie case.

**B.     Pretext**

Even if ReFour were able to establish his prima facie case, PAR has presented a legitimate, non-discriminatory reason for ReFour's termination, that is, Kroshus's belief that ReFour had violated PAR's sexual harassment policy. Thus, as explained above, the burden reverts to ReFour to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual. Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005).

To demonstrate pretext, ReFour must show that PAR is lying in order to cover up its discriminatory motive. See Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998). "The pretext analysis seeks to uncover the true intent of the defendant, not the belief of the plaintiff." Sanchez v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999); see also Forrester v.

---

[2] ReFour does identify Compton as an employee to whom he was similarly situated based on her termination from one of PAR's sister companies for violating one of PAR's policies. He claims that her treatment was more favorable in that PAR is apparently paying for Compton's attorney fees. There are multiple problems with this argument, the most glaring of which is that Compton was not even an employee of PAR when she violated company policy. In addition, there is no showing that she "held the same type of job, was disciplined by the same supervisor, was subject to the same standards, had comparable experience and qualifications, and had engaged in the same conduct without differentiating or mitigating circumstances" as ReFour.

Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006) (since pretext is a deliberate falsehood, the only concern in reviewing an employer's reasons for termination is the honesty of the employer's belief). ReFour does not dispute that Kroshus honestly believed that he had sexually harassed Compton. Indeed, ReFour testified that it is possible that Compton herself sincerely misheard or misinterpreted what he had said to her in the break room. ReFour Dep. at 34-35, 39.

Instead of challenging the veracity of PAR's reason for terminating him, ReFour argues that Kroshus's failure to follow proper procedures resulting in his termination establishes pretext. He further maintains that the evidence he has mustered to show that similarly-situated employees were treated more favorably than he also establishes pretext. For the reasons explicated below, we are not so convinced.

ReFour has designated an email from Sirena Beckman, PAR's Human Resources Manager, to Kroshus advising him to contact her before terminating employees in the future, in apparent response to his failure to do so in terminating ReFour. While ReFour correctly notes that the Seventh Circuit has held that "an employer's failure to follow its internal employment procedures can constitute evidence of pretext," Guinto v. Exelon Generation Co., LLC, 2009 U.S. App. LEXIS 18447, at **15-16 (7th Cir. Aug. 18, 2009)(quoting Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 727 (7th Cir. 2005)), the cases so holding "rest on the assumption that the plaintiff is challenging the veracity of the employer's proffered reasons." Guinto, 2009 U.S. App. LEXIS 18447, at **16. Here, as in Guinto, ReFour admitted that he has no reason to think that Kroshus, the undisputed decision-maker, would discriminate against him. ReFour Dep. at 74. Furthermore, we do not read Beckman's email to state that Kroshus actually violated established company procedures. As Beckman testified in her affidavit, it was her "personal

preference to be informed about a potential termination," as opposed to a policy of the company which Kroshus failed to follow. Beckman Aff. ¶¶ 4-6.

ReFour also asserts that his evidence that similarly-situated employees of PAR were treated more favorably than he should also be considered as evidence of pretext. As discussed above, however, he fails to identify any such employee(s).

In sum, ReFour again fails to show that PAR's proffered reason for his termination, namely, Kroshus's belief that ReFour had sexually harassed Compton, was a pretext for racial discrimination. Thus, his claim cannot succeed.

## Conclusion

For the reasons detailed herein, Defendant's motion for summary judgment is GRANTED. Final judgment enter accordingly.

IT IS SO ORDERED.

Date: 12/12/2012

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Brett Edward Buhl
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brett.buhl@odnss.com

Robert F. Seidler
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
rob.seidler@ogletreedeakins.com

Joel Samuel Paul
RAMEY & HAILEY
joel@rameyandhaileylaw.com